U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT 2025 APR 14 AM 9: 12

CLERK

BY_____AL_____
DEPUTY CLERK

| | |
|---|---|
| MANSFIELD HELIFLIGHT, INC.<br>and ERIC D. CHASE,<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS R. LONGO, in his official capacity as<br>Director of Aviation for the City of Burlington<br>and his individual capacity, DAVID E. CARMAN,<br>in his official capacity as Deputy Director<br>of Aviation for the City of Burlington, and his<br>individual capacity, CITY OF BURLINGTON<br>VERMONT, and JOHN DOES ONE, TWO,<br>THREE, *ETC.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 2:25-CV-388

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiffs Mansfield Heliflight, Inc. ("MHI") and Eric D. Chase ("Chase") (collectively Plaintiffs), by and through undersigned counsel, file this Complaint against (1) Nicholas R. ("Nic") Longo ("Longo"), the Director of Aviation at Patrick Leahy Burlington International Airport ("Airport" or "BTV") in his official and individual capacities; (2) City of Burlington Deputy Director of Aviation David E. Carman ("Carman"), in his official and individual capacities; (3) the City of Burlington, Vermont, which owns and operates the Airport; and (4) to be named additional Defendants (John Does One, Two, Three, *etc.*) (collectively "Defendants"), to seek relief for the campaign of improper retaliation engaged in by Defendants against Plaintiffs because of Plaintiffs' exercise of their free speech and petition rights under the First Amendment to the U.S. Constitution and Article I, Chapters 7 and 13 of the Vermont Constitution, to criticize publicly the City's decision to allow Beta Technologies, Inc. ("Beta") to significantly expand its footprint

at BTV in a manner that was intended to displace MHI and other general aviation tenants from critical space necessary to operate at the Airport.

## INTRODUCTION

1.     The City owns and operates the Patrick Leahy Burlington International Airport ("BTV" or "Airport"), a federally-funded, commercial service, small hub airport that is the largest airport in the State of Vermont.

2.     Plaintiff Mansfield Heliflight Inc. is a Federal Aviation Administration ("FAA") approved Part 135 Air Carrier established by Plaintiff Eric Chase in 1986 to provide the Greater Burlington area with aerial patrol, aerial photography, Lake Tours and sightseeing.  Since that time, the company grew considerably and has offered a full range of services based out of its offices in Milton, Vermont and at BTV.

3.     Beta Technologies, Inc. ("Beta") is a South Burlington, Vermont-based corporation founded in 2017 by its President, Kyle Clark. It is an aerospace manufacturer developing electric vertical take-off and landing ("eVTOL") and electric conventional take-off and landing ("eCTOL") aircraft for the cargo, medical passenger, and military aviation industries.

4.     Starting in 2018, the City embarked on a strategic initiative to enable Beta to possess a sharply expanded footprint at BTV.  By 2021 the City's installment of Beta at a large portion of the space-restricted airport (the "Beta Expansion Initiative") was at the expense of members of the general aviation community that were already utilizing significant portions of the Airport, and especially MHI and its principal, Eric D. Chase.

5.     In furtherance of the Beta Expansion Initiative, the City adopted – and through Defendants Longo and Carman – pursued a municipal policy or custom that caused Plaintiffs' injury by improperly retaliating against Plaintiffs because of Plaintiffs' public vocal and written

2

opposition to the Beta Expansion Initiative. After MHI and Chase exercised their First Amendment rights of free speech (and to petition the government) by complaining publicly about the aspects of the Beta Expansion Initiative that interfered with MHI's and Chase's utilization of the Airport, the Defendants responded by engaging in a campaign of improper retaliation which financially harmed Plaintiffs and ultimately resulted in MHI and Chase being evicted from the Airport.

6.      At all operative times, Defendants Longo and Carman were acting under color of state law due to their high-level positions in the City and at BTV. They were the City officials that acted on behalf of the City with regard to the City's mistreatment of Plaintiffs.

7.      The fact that Defendants were motivated by Plaintiffs' exercise of First Amendment rights to complain about the Beta Expansion Initiative is demonstrated by, among other things, Defendants' insistence that Plaintiffs agree to a comprehensive non-disparagement clause in any new lease agreement for their use of the Airport. This first occurred on April 15, 2022, when Defendants, as a condition of a proposed 30-day lease extension between MHI and the City, demanded that Plaintiffs agree to the following restriction on the exercise of First Amendment rights:

> **6. Non-Opposition.** Lessee agrees not to contest, appear as an adverse party, or in any other manner oppose or appeal, any application made by the City, its agents, or other tenants ("Lessor Affiliates") to any governmental or municipal entity, board, commission or officer for improvements, alterations or expansion of or to the Burlington International Airport, including without limitation, any application made by the City or Lessor Affiliates to the South Burlington zoning administrator, the South Burlington Development Review Board, the Vermont District Environmental Commission, or any other municipal or state regulatory body. Breach of this covenant shall be a material event of default under the Lease and cause for immediate termination.

In other words, if MHI wanted to remain at BTV, it needed to refrain from any further public criticism of the City's policies and decisions regarding Beta Technologies and the Airport.

8. MHI did not agree to the unlawful "Non-Opposition" clause when the City presented it on April 15, 2022, or later that summer when the City once again tried to coerce MHI to agree to an even more stringent "Non-Opposition" clause as a condition for entry into a new lease.

9. Because of the Plaintiffs' exercise of their First Amendment rights, and their refusal to agree to the Non-Opposition Clause, the Defendants engaged in multiple and severe acts of retaliation designed to financially harm Plaintiffs, to interfere with their use of the Airport, and to force Plaintiffs off the Airport, which is exactly what transpired.

## JURISDICTION AND VENUE

10. Because this Complaint alleges that Defendants violated the federal constitutional rights of Plaintiffs, this Court has jurisdiction under 28 U.S.C. §§1331, 1343(3) and (4), and 42 U.S.C. §§ 1983, 1988.

11. The Court also possesses supplemental jurisdiction under 28 U.S.C. § 1367 to consider and provide relief to Plaintiffs under the state law claims.

12. Venue in this Court exists under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District, and all of the property that is the subject of this action is situated in this District.

## PARTIES

13. Plaintiff MHI is a Vermont corporation with its principal place of business at 159 Catamount Drive, Milton, Vermont.

14. Plaintiff Eric D. Chase is the founder, owner, Director and President of MHI with a business address of 159 Catamount Drive, Milton, Vermont.

15.    Defendant Nicholas R. ("Nic") Longo is the City's Director of Aviation, and prior to becoming Director he was the Acting Director of Aviation. He is sued in his official and individual capacities. Director Longo's business address is Burlington International Airport, 1200 Airport Drive, South Burlington, VT 05403.

16.    Defendant David E. Carman is the Deputy Director of Aviation for the City. He is sued in his official and individual capacities. Deputy Director Carman's business address is Burlington International Airport, 1200 Airport Drive, South Burlington, VT 05403.

17.    Defendant City of Burlington, Vermont is a Vermont municipal corporation which owns and operates the Patrick Leahy Burlington International Airport, which is located in South Burlington, Vermont. The official address for the City is 149 Church Street, Burlington, VT 05401.

18.    Defendant John Does One, Two, Three, *etc.*, are current or former members of the City government that participated in the unlawful campaign to retaliate against Plaintiffs because of Plaintiffs' exercise of their First Amendment rights.

## STATEMENT OF FACTS

### Mansfield Heliflight, Inc. (MHI)

19.    MHI has a 14 C.F.R. Part 135 approval from the FAA to operate as a certificated Air Carrier and operates in several different economic areas broadly defined as general aviation.

20.    MHI's operations include air taxi services by both helicopter and fixed wing aircraft, a flight school, and aircraft sales and maintenance.

21.    Among other aircraft, MHI owns a Bombardier Global 6000 jet that is approximately 99-feet long and weighs approximately 49,820 pounds. The jet is worth approximately $20 million and was stored at MHI's hangar at the Airport until the City demanded

that MHI remove the jet from the hangar or face it being dismantled, and removed.

22.     BTV is the preferred airport in the State of Vermont as it has a runway large enough to land and taxi the Global 6000. The Global 6000 was in maintenance at the time, and could not be transported away from the Airport over land due to its size.

23.     MHI also owns and operates other helicopters and fixed wing aircraft that it had previously stored at the "South Hangar" where MHI had leased a large hangar at the airport. Although these aircraft theoretically could operate from a smaller airport, it would be economically unviable to do so because the majority of air taxi customers are located in Burlington, and there is no suitable smaller airport in reasonable geographic proximity to serve these customers.

**The MHI Lease at BTV**

24.     On April 26, 2017, MHI and the City entered into a lease ("Lease") for certain facilities at the Airport.

25.     The Lease covered property which included a building commonly known as the South Hangar and additional undeveloped land, which were located at 240 Valley Road, South Burlington (the "Leased Premises").

26.     The Lease provided that MHI would have possession of the Leased Premises for a period of five (5) years, commencing May 1, 2017. *See id.*, § 4.01.  The Lease further provided an option for MHI to renew the Lease for a second five-year period. *Id.*

27.     The South Hangar was unique in that MHI's operations require large hangar space at the Airport.

28.     It was part of MHI's business plan that it would have the undeveloped land that was part of the Leased Premises for future uses.

29.     After taking possession of the Leased Premises, MHI entered into subleases with Mansfield Aviation International, Mansfield Heliflight International, Green Mountain Flight Academy, Green Mountain Cover Crops, Bradford Worthen, Andy Strickler, James Gamble, and Chris Weinberg (collectively, "Subletters").

30.     The subleases with the Subletters generated monthly revenue for MHI.

**Beta Technologies**

31.     At some point during the initial term of the Mansfield Lease, Beta Technologies became interested in obtaining MHI's Leased Premises for its own business purposes.

32.     On April 15, 2021, Beta President Kyle Clark contacted MHI President Eric Chase via email, inquiring if MHI wanted to "sell" its Lease at the Airport. A subsequent email on April 20, 2021, stated that Beta wanted to work with MHI before "pursuing other options."

33.     Mr. Clark presented the originally a scenario of a short-term situation to Chase in person, and put the same in an email offering compensation of up to $600,000 for MHI's inconvenience and cooperation, as Beta had an urgent short-term need for the space. However, after meeting with Chase the offer from Clark came in an email which was different than previously discussed. This offer was for MHI to completely sell its rights and assign the entire leasehold over to Beta. MHI took into consideration that it planned to renew its leasehold for another 5-year term, and had already made a huge financial investment, of both time and money in having established a significant presence at the Airport.

34.     MHI made a counter-offer which it thought was fair given all that MHI had done to be in the position it was in. Mr. Clark then revised the offer to be closer to one million dollars and proposed helping MHI secure another hangar at BTV in the near future. Neither offer came to fruition.

CLARKHILL\M8787\500444\281658000.v1-4/11/25

35.     On April 26, 2021, MHI sent an email to the then Airport Director, Eugene Richards, advising that MHI's intention to exercise its option to renew the Lease for a second five-year term. Director Richards acknowledged MHI's notice of renewal on the same date he received it.

36.     After renewing the Lease for a second five-year term, MHI intended to continue its subleases with the Subletters.

37.     Mr. Richards was removed as Director of Aviation in the Summer of 2021.

### The City's Issuance of a License Agreement for Beta Technologies' Operations at BTV

38.     On November 8, 2021, the Burlington City Council approved the issuance of a license agreement with Beta for work on the Airport in a section known as "the Valley." This was pursuant to the City's Beta Expansion Initiative.

39.     Subsequently, in October 2023, Beta opened a 188,500-square-foot production facility at the Airport. *https://vermontbiz.com/news/2023/october/06/beta-technologies-opens-electric-aircraft-production-facility* (Vermont Biz) (October 6, 2023). As depicted below, the "facility is located on a 40-acre site, with potential to support a significant expansion, doubling in size via a Phase II build-out." *Id.*





**MHI Publicly Objects to the City's Favoritism Towards Beta Technologies**

40.    MHI and other general aviation entities publicly criticized the manner in which the

City was exhibiting undue favoritism towards Beta Technologies in a manner that was going to

displace MHI and other general aviation companies from the restricted space available for general

aviation activities at the Airport.

41.    For example, an article in VT Digger dated December 20, 2021, titled "As Beta

expands, other Burlington Airport tenants worry they'll be boxed out," stated:

> As electric aircraft maker Beta Technologies plans its rapid expansion at Burlington
> International Airport, a handful of nearby businesses are concerned that local
> officials may sideline their future operations to make way for Beta.
>
> The tenants — all of whom work in "general aviation," the sector of flying that
> includes charters, flight schools and private planes — say they have no bone to pick
> with Beta, whose success they salute.
>
> But they do find fault with the airport for, in their eyes, not being transparent about
> how Beta's expansion could affect "The Valley," Burlington's hub for general
> aviation.
>
> Unease about the airport's openness with tenants was on full display at a Burlington
> City Council meeting last month, when some general aviation businesses told
> councilors they weren't made aware of whether an agreement between Beta and the
> airport would affect their leases.

https://vtdigger.org/2021/12/20/as-beta-expands-other-burlington-airport-tenants-worry-theyll-be-boxed-out/

42.    The December 20, 2021, article went on to quote Plaintiff Chase:

> As it developed the master plan, airport management sought input from the general
> aviation community, Longo said, but the businesses that are now pushing back
> against the airport's decisions did not participate in the process.
>
> Yet Eric Chase, owner of Mansfield Heliflight, contends that the airport was never
> proactive in reaching out to his company.
>
> "They never called up and said, 'Hey, Mansfield, how can we help you and how do
> you want to contribute to the master plan?' That's never happened," Chase said.

CLARKHILL\M8787\500444\281658000.v1-4/11/25

43.    The December 20, 2021 article added:

Longo said he is committed to maintaining a healthy general aviation community at the airport.

But Chase isn't so sure. The permits that Beta secured with South Burlington for its manufacturing facility show overlap with Mansfield Heliflight's current lease, which doesn't lapse until 2027, he said.

"We're still concerned that we're going to have to fight about it," Chase said. "We shouldn't have to fight about it. As far as we're concerned, we've already done everything that we were supposed to do."

Chase said he'd be open to the possibility of renegotiating his company's lease with the airport if Longo asked him about it. But that step hasn't been taken yet, he said.

"We're not opposed to negotiating or talking with people," Chase said. "But we're certainly opposed to people assuming our property."

44.    A subsequent article in VT Digger on January 4, 2022 was titled "Tenants decry Burlington airport director's handling of Beta expansion." The article stated:

Roughly three-quarters of a mile from where most passengers at Burlington International Airport catch their flights, an area used for general aviation purposes — such as pilot schools or charter flights — is poised for a facelift, as electric aircraft maker Beta Technologies expands its footprint.

"The Valley" is the general aviation area of Burlington International Airport.

But the airport's handling of Beta's growth in "the Valley" has been met with disapproval by some general aviation stakeholders. Airport administrators, in their view, have gone back on assurances made to smaller companies that they wouldn't be impacted by Beta's expansion.

Still, Burlington's acting Director of Aviation Nic Longo takes issue with that characterization, saying the airport's plan for future development allows both Beta and general aviation companies to thrive.

Among those concerned with how the airport is dealing with Beta's buildup is longtime tenant Mansfield Heliflight, a Milton-based charter flight and aircraft repair company.

Officials from the city of Burlington, which operates the airport, told the company in a letter last month that its lease at the airport would not be renewed after it expires at the end of April.

In the letter, officials offered Mansfield a new, two-year lease that would include its hangar but "exclude the majority of the existing parking and lawn areas," according to a copy of the document reviewed by VTDigger.

In the Valley, some stakeholders felt the airport's move contradicted statements Longo made at a Nov. 8 Burlington City Council meeting. At that meeting, Longo told councilors that no aviation-related tenants would be affected by an agreement between Beta and the airport clearing the way for the company to construct a new manufacturing facility in the Valley.

In a Monday interview with VTDigger, Longo said the Beta agreement was a factor in the termination of Mansfield's existing lease terms. For Beta to build a loading dock area for its manufacturing facility, it needs Mansfield's parking lot, he said.

On top of giving Beta more space, Longo said Mansfield's "past payment history" was "a massive consideration in this lease negotiation."

Eric Chase, the owner of Mansfield Heliflight, told VTDigger that his company received a default letter from the airport in 2020, because — according to Chase — the airport was unclear about whether Mansfield could get relief from its rent during the pandemic. The company eventually paid back the airport, Chase said.

Aside from Mansfield Heliflight, tenants in the Valley recently had their leases renewed for two to five years, Longo said.

Still, those extensions have not persuaded everyone that, as the airport apportions its 942 acres, it has the general aviation community's best interests in mind. . . .

https://vtdigger.org/2022/01/04/tenants-decry-burlington-airport-directors-handling-of-beta-expansion/

45.    On January 5, 2022, "Members of the General Aviation Community," including MHI and Chase, sent a letter to then-Mayor Weinberger and Members of the Burlington City Council "in regards [sic] to the license agreement approved by the city council on November 8, 2021 between Beta Technologies, Inc. and the City of Burlington."  The letter stated:

The General Aviation stakeholders support the growth of Beta Technologies. However, the way in which the airport has conducted itself, as it has moved forward to accommodate the needs of Beta, has raised concerns about the airport and city supporting one business to the detriment of others. . . .

On Monday, December 20th, Mansfield Heliflight, one of the General Aviation tenants and current leaseholders of the Valley area at Burlington International Airport, received notice from Assistant City Attorney, Timothy Devlin, that their lease would not be renewed upon its expiration of April 30, 2022.  The Assistant

City Attorney offered that the city would be willing to enter into a new two year lease with Mansfield Heliflight but that the lease would not include the majority of the outdoor area and parking lot that is included in the current lease.

The action taken by the city is contrary to the assurances provided to the council by the Acting Director of Aviation [Defendant Longo] on November 8th as well [as] the multiple verbal assurances that he provided to General Aviation tenants and stakeholders in meetings that took place after the November 8th council meeting.

A number of other Valley tenants were recently offered lease extensions ranging from 2-5 years. While this represents progress and follows through on some of the assurances provided, the lease extensions are inconsistent from tenant to tenant. This raises the question of why certain tenants are being offered longer extensions than others and the potential of preferential treatment. The disparity also creates considerable suspicion as to whether the airport plans to turn areas that have only been granted a 2 year extension over to Beta in the future. More importantly, none of the extensions provide sufficient certainty regarding any of the existing tenants' and business' ability to continue to operate at the airport beyond a relatively short period of time. . . .

**Based on these facts, the [Beta Technologies] license agreement that was approved by the council appears to be one based on false pretenses. We respectfully request that the council take [specified] actions in order to maintain transparency in the dealings of a public airport and government body as well as to ensure that the public has sufficient input, as required by the FAA, in the airport planning process** . . . [including, without limitation, a prohibition against the Airport] terminating any of the leases of current aviation leaseholders of the Valley and offer a minimum of 5 years of lease extensions to these tenants.

Letter, at 2-4 (emphasis added).

46.    Also in early of January 2022, Plaintiff Chase appeared on a local Channel 3 news broadcast to complaint about how the City was allowing Beta to take over MHI's parking area space in a manner that would negatively impact MHI's future business plans. According to Chase, the City was improperly allowing Beta to obtain "valuable land that [MHI] aircraft were supposed to utilize."

13

**The City's Demand that MHI Agree to a "Non-Opposition" Clause**

47.     Following MHI's and Chase's exercise of their free speech rights to publicly criticize the City's Beta Expansion Initiative, the Defendants reacted with a litany of acts designed to punish Plaintiffs for their public criticism.

48.     MHI maintains that it gave the City timely notice of the exercise of its renewal option for the Lease and that therefore the Lease extended until the end of April 2027. However, the City reneged on its acceptance of the Lease renewal. That breach of contract by the City is the subject of a separate state Vermont court litigation, *Mansfield Heliflight, Inc. v. City of Burlington d/b/a Burlington International Airport and Beta Technologies, Inc.*, No. 22-cv-03976 (Superior Court, Chittenden Unit), and this new case does not seek to relitigate the claims pursued in that state court case.

49.     On April 15, 2022, the City sent MHI a proposed "THIRTY-DAY EXTENSION OF AGREEMENT AND LEASE OF PREMISES FOR 'SOUTH HANGER,' 240 VALLEY ROAD . . ." In order for the City to agree to "extend the lease from its expiration date until midnight on May 31, 2022," MHI needed to agree to the following "Non-Opposition" clause:

> **6. Non-Opposition.** Lessee agrees not to contest, appear as an adverse party, or in any other manner oppose or appeal, any application made by the City, its agents, or other tenants ("Lessor Affiliates") to any governmental or municipal entity, board, commission or officer for improvements, alterations or expansion of or to the Burlington International Airport, including without limitation, any application made by the City or Lessor Affiliates to the South Burlington zoning administrator, the South Burlington Development Review Board, the Vermont District Environmental Commission, or any other municipal or state regulatory body. Breach of this covenant shall be a material event of default under the Lease and cause for immediate termination.

50.     In other words, the City mandated that MHI contractually agree not to oppose any action by the City relating to the Airport as a condition of MHI being able to remain a tenant at the Airport.

CLARKHILL\M8787\500444\281658000.v1-4/11/25

51.    On April 14, 2022, Jeff Glassberg, a real estate consultant for the City, sent an email to Defendant Longo and City attorney Timothy Devlin stating that if MHI "get[s] even a thirty day extension, it has to include an agreement not to appeal.  Otherwise, from the perspective of defending an appeal, we are better off if their lease has expired and they have" no "rights or tenure as a 'neighbor'" to object to Beta's expansion at the Airport. He went on to say that "They don't get a 30 day extension without the waiver of appeal. They don't get a lease renewal without the waiver."

52.    MHI was invoiced and paid the May 2022 (the start of the new lease term) rent, further confirming to MHI that the renewal of the additional five-year term was in full force and effect. In addition, MHI timely sent payment for June 2022 rent on June 2, 2022, by wire transfer.

53.    This payment was rejected by the City, which returned the payment to MHI on June 13, 2022, purportedly because there was no invoice number associated with the payment.  This excuse was specious given that wire transfers previously submitted to the City by MHI rarely, if ever, made reference to an invoice number. MHI would later come to learn that their account was noted that at the direction of Mr. Longo was not to get anymore invoices. One could only assume it was because he considered that the issuance and payment of the May invoice, solidified MHI's belief that its renewal of an additional five-year term was valid.

**Beta's 75-Year Lease at BTV**

54.    On or about July 18, 2022, the City and Beta signed a 75-year lease for property that includes an area that is part of MHI's Leased Premises. The Beta lease was for an additional 667,067 square feet at the Airport for at the rate of .0389 per square foot with an option to expand another 124,018 square feet if they so choose at the same rate per sq foot of .0389. The lease to Beta states that the premises will be used for the development and construction of a production

15

facility, parking lots, childcare facilities, and apron areas. It also provides for Beta to receive an $11.5 million rent credit, plus an additional 3.5% interest on the $11.5 million until the credit is zero and an exclusive right to lease expansion parcels including parcels that are under lease to other airport tenants.

55.    Thirty-three thousand square feet of the premises leased to Beta included premises that were actually within MHI's Leased Premises.

56.    The area of MHI's Leased Premises included in Beta's lease is aeronautical land that was being developed by Beta for a non-aeronautical purpose (of a loading dock) without the approval of the Federal Aviation Administration or a change to the City's FAA-approved airport layout plan for BTV.

57.    According to an account published online by Vermont Biz on July 19, 2022:

The Burlington City Council gave unanimous approval Monday night to a 75-year lease between the Burlington International Airport and BETA Technologies to help ensure that the innovative, electric aviation company remains a vibrant part of the region's economy for the long term. The agreement will enable BETA to construct and operate a 355,000-square-foot building on airport property to design, produce and assemble electric aircraft.

BETA had previously settled a sticky parking issue with the South Burlington Development Review Board in April that allowed the process for the massive project to move forward.

"BETA's vision of electric aviation fully aligns with Burlington's vision of a fully-electrified, net zero city that offers vast opportunities to all who want to make this special place their home. This lease ensures that, for many years to come, BETA can continue its remarkable growth and innovation right here at BTV," said Mayor Miro Weinberger. "I want to thank BETA for working collaboratively to see this process through, the Council for their support, and Acting Aviation Director Nic Longo and his team for getting us to this critical milestone."

"I am glad that with this carefully negotiated lease and the strong support of the City Council, we are one step closer to seeing BETA being an innovative part of Vermont for years to come," Mayor Weinberger said.

"We are grateful to Mayor Weinberger, the City Council of Burlington, the Airport Director Nic Longo and the local community for the ongoing support of BETA's

growth in Vermont," said Kyle Clark, Founder and CEO of BETA. "With this agreement, BETA will launch its production here in Vermont within a new sustainable and responsible green campus here at the airport."

https://vermontbiz.com/news/2022/july/19/burlington-city-council-approves-75-year-beta-technologies-lease-btv

58.    On July 18, 2022, then City Mayor Weinberger sent an email to Defendant Longo which stated:

I want to be clear that other than the emails below I know nothing about the current push to make a deal with Mansfield and this appears to be a very different direction than the last conversations I was involved with.  My understanding was that negotiations with Mansfield had stalled and no further efforts were being made with them until after [the] Beta lease was resolved and we could take a fresh look at this.

**That is still where I am. I am not clear that Mansfield is a good long-term partner for the airport, especially as I understood this parcel could be helpful in meeting our goals for BTC**. (Emphasis added)

**The City Demands that MHI Agree to an Even More Severe Non-Opposition Clause**

59.    In July 2022, the City once again demanded that MHI agree to non-opposition language as a condition of a new lease at BTV, with a harsher sanction if it was breached. Section 10.02 of the proposed lease stated:

Section 10.02 – Non-Opposition

TENANT agrees not to contest, appear as an adverse party, or in any other manner oppose or appeal, any application made by the CITY, its agents, or other tenants ("Tenant Affiliates") to any governmental or municipal entity, board, commission or other officer for improvements, alterations or expansion of or to the Burlington International Airport, including without limitation any application made by the CITY or Tenant Affiliates to the South Burlington zoning administrator, the South Burlington Development Review Board, the Vermont District Environmental Commission, or any other municipal or state regulatory body.  **Breach of this covenant shall be a material event of default under the Agreement and cause for immediate termination without the opportunity to cure.** (Emphasis added)

60.    The new highlighted language in the new Non-Opposition Clause demonstrates that Defendants were intent on enforcing an event more stringent non-opposition provision on

17

Plaintiffs.

61.     After MHI stated its objection to such a "Non-Opposition" clause, the City told MHI in an email from BTV Chief Financial Officer Marie J. Friedman dated July 15, 2022 to MHI and Longo that the City had agreed to remove section 10.02 – "Non-opposition Clause." However, Defendant Longo at 4:59 pm on August 1, 2022 emailed MHI a new version of the lease which continued to contain the same offensive clause, and demanded that MHI execute the new lease (with the offending provision) by 4.30 pm on Wednesday, August 3, 2022.

62.     Because the City refused to enter into a new lease with MHI unless MHI agreed to the non-opposition language demanded by the City, MHI had no choice but to decline to sign the new lease (with its unlawful Non-Opposition Clause), and did not sign the new lease.

63.     MHI also could not sign the new lease because the City refused to acknowledge that MHI had exercised its renewal option, the City insisted on reducing the square footage of the new lease, and the City was improperly increasing MHI's rent to a rate higher than any rent paid by any existing tenant on the Airport.

64.     The Defendants then proceeded to implement a campaign of retaliation against MHI and Chase, such that Chase was denied access to the secure areas of the Airport, MHI and Chase were evicted from his hangar, and they were forced to remove all of their aircraft from the Airport.

**The City's Eviction of MHI from the Airport**

65.     On September 14, 2022, Mayor Weinberger appointed Defendant Longo as the City's Director of Aviation. https://www.burlingtonvt.gov/CivicAlerts.aspx?AID=3532

66.     On September 28, 2022, the City sent MHI a notice terminating the Lease.

67.     After May 1, 2022 but before September 28, 2022, the City never provided notice

that MHI was in default for failure to make rental payments or demanding payment of overdue rent. In fact, MHI paid the rent for both May and June. However, on information and belief on or about June 13, 2022. Longo gave the instruction to return the June payment, citing that there was not an invoice to apply the payment to.

68.    In the September 28, 2022 notice, the City stated its intent to terminate the Lease and demanded that MHI vacate the Leased Premises by October 31, 2022.

69.    The September 28, 2022 notice incorrectly demanded payment for May 2022, because MHI had already made that payment, which the City had accepted.

70.    On October 27, 2022, MHI paid all of the rent payments demanded by the City by wire transfer under protest. In so doing, MHI paid and the City accepted rent for October 2022.

71.    Despite the fact that the City continued to invoice MHI for the full Leased Premises and asserted that MHI was a month-to-month tenant, it leased a portion of the Leased Premises to Beta, and excluded MHI from that space.

72.    On October 28, 2022, MHI paid under protest by wire transfer the amount of $17,112.85 as rent for November 2022, which the City accepted. This new monthly rent was dramatically higher than MHI's previous rent, could not be justified by the application of typical rent escalation methodologies such as the Consumer Price Index, was not derived through good faith negotiations, and was dramatically higher than rent increases being applied to other Airport tenants during the same timeframe.

73.    Upon information and belief, after sending the termination notice to MHI, the City contacted certain of the Subletters and offered to allow them to remain in the South Hangar with the City taking over as the landlord.

74.     On November 1, 2022, the City, by and through four (4) employees and agents, including two armed police officers in police vehicles with lights flashing, arrived at the South Hangar to forcibly eject MHI, and installed new locks on the South Hangar which was MHI Leased Premises.

75.     These City employees and agents, including the armed police officers, changed the locks at the South Hangar and informed MHI that within ten (10) days the temporary access code given to MHI would be cancelled and a new access code would be provided to permit MHI to remove personal property but not to conduct any business operations at the airport.

76.     The City employees and agents also threatened MHI that if it did not remove its personal property, including airplanes and airplane components within thirty (30) days, the City would dispose of MHI's property.

77.     On November 10, 2022, MHI filed the above-referenced state court complaint against the City.

78.     On December 29, 2022, the City filed a counterclaim for eviction claiming a right to possession of the Leased Premises.

79.     In an email dated September 1, 2023, Defendant Carman told BTV "Airport Operations" personnel:

Good Morning!

Just an update on Mansfield Heliflight. As of today, Mansfield Heliflight in the Valley is no longer a tenant at BTV. They have until Midnight on Tuesday September 5 to vacate all their property and belongings, after which time, they will not longer have access to the airport. The vacated hangar is slated to have major renovations as it becomes the new home for Burlington Technical Center. Subtenants will be permitted to stay in the hangar as we enter agreements with them.

80.     On November 16, 2023, Defendant Carman told BTV "Airport Operations" that no

CLARKHILL\M8787\500444\281658000.v1-4/11/25

Airport employees should "be communicating with" MHI's principals.

81.     The City's eviction of MHI effectively destroyed its business operations that were conducted from the Leased Premises, including its operations related to the sale and service of large, fixed wing jets.

82.     Following MHI being evicted from the Airport by the City, the City proceeded to deny Chase the effective ability to utilize his SIDA access badge to enter secure portions of the Airport that were needed for Chase to provide maintenance on his aircraft at the Airport.

83.     On November 08, 2023, Defendant Carman contacted a towing company Elite Towing and asked them to come and tow away a tug (which was parked next to the Aircraft on the apron (which is where airport staff told us to park it) a crane and a fuel truck. Defendant Carman told the person picking the items up that they were abandoned by a flight school, but did not give him MHI's contact information. Carman then asked the tow truck driver if he could also dismantle and remove MHI aircraft.

**City Efforts to Seize MHI's Aircraft**

84.     In 2024, the City repeatedly threatened to seize and take ownership of MHI's aircraft at the Airport, including the Global 600 jet and its Phenom Aircraft, improperly asserting that the aircraft were not airworthy or had been abandoned by MHI. These threats were so serious that they forced MHI to remove the aircraft from BTV to avoid the City confiscating the aircraft.

85.     MHI received notice that the Airport staff had contacted one or more third parties to provide quotes to dismantle and/or remove the MHI Global 6000 and Phenom Aircraft from BTV. However, none of these aircraft were abandoned by MHI. To the contrary, MHI repeatedly informed the City that it had not abandoned its aircraft.

CLARKHILL\M8787\500444\281658000.v1-4/11/25

86.     The only occasions in which Chase did not access the MHI aircraft at the Airport was when the City unlawfully refused to allow Chase to access the aircraft.

87.     Not only were the MHI aircraft not abandoned as that term is used in 5 V.S.A. § 222(a), but it was also clear that the City had failed to provide MHI with the requisite 60-day prior written "notice-of-intent" required in 5 V.S.A. § 222(b).

88.     On February 20, 2024, Defendant Carman told Defendant Longo and other BTV employees that MHI "cannot, and will not, be able to visit aircraft they left on airport property," and not to "engage in conversations with Eric Chase or any other representative of Mansfield. This is critically important."

89.     In an email to MHI, Chase, Defendant Longo and City attorney Pietro Lynn dated February 21, 2024, Defendant Carman stated to MHI:

> You, nor any representative of Mansfield Heliflight can have access onto the airport to get to your aircraft, even under escort. If you want to see your aircraft left at the airport, it can only be made by arrangements though your attorney. Our position is that the planes have been abandoned.

90.     That same day, MHI responded by email stating:

> Hello Mr Carman
>
> To be clear, we most certainly have NOT abandoned any of our Aircraft. As you know we have been repeatedly denied Eric Chase's SIDA badge.
>
> Lisa and or Matt will be contacting Mr. Lynn.

91.     On March 8, 2024, the City's lawyer, Pietro Lynn, sent a letter to MHI which purported to serve "as notice, pursuant to 5 V.S.A. § 222(b)(1), that the City intends to exercise its authority under V.S.A. § 222(a) to take custody of and remove the 2013 Bombardier Global 6000 . . . that has apparently been abandoned by" MHI and "move it to outdoor locations on the Airport premises . . . and eventually sell it," all at a cost to be imposed on MHI.

22

92.     On March 11, 2024, MHI's counsel emailed lawyers for the City, stating: "As I have told you in the past, we thoroughly reject your contention that Mansfield's aircraft is 'apparently abandoned.' To the contrary, the City locked Mansfield out of the hangar."

93.     On March 19, 2024 MHI was notified by the Vermont Chamber of Commerce - an organization that MHI has been an active member of since 1997 - that staff at the Airport had noticed that MHI had signed up to attend a Chamber event being held at the Airport, and informed the Chamber that MHI was not going to be allowed in the public Airport Terminal to attend the event.

94.     A letter from MHI's counsel dated March 28, 2024 to attorney Lynn reiterated that MHI had "consistently advised" Lynn "that MHI had not abandoned these aircraft, and to the contrary asserts all right and interest in them." Page 1. The letter added:

> The City and airport director [Defendant Longo], however, have denied MHI access to its aircraft, thus making it impossible to perform necessary maintenance or repairs on its aircraft or to remove the aircraft currently in the South Hangar. The aircraft are being continually damaged by the City's refusal to permit MHI to access or maintain its property.
>
> When I demanded that you supply information about MHI can obtain necessary access, you (through your associate Hans Lynn) directed that MHI "coordinate directly with Nic Longo and the airport" for access. Mr. Longo and the Airport, however, have refused to respond to MHI's emails or phone messages. I have since come to understand that you have directed the airport staff to deny access to MHI. I can only conclude that your instruction to have MHI arrange such access directly with "Mr. Longo and the airport" was not made in good faith.
>
> The City's interference with MHI's rights to its aircraft is wholly unjustified and deprives MHI of the value and use of its property. (*Id.*)

## CLAIMS FOR RELIEF

## COUNT ONE – VIOLATION OF THE FIRST AMENDMENT

## (42 U.S.C. 1983)

95.    Plaintiffs restate and incorporate herein the allegations set forth above.

96.    As set forth above, the City adopted and pursued a municipal policy or custom that caused Plaintiffs injury by retaliating against Plaintiffs because of Plaintiffs' exercise of their First Amendment right of free speech through public vocal and written opposition to the manner in which the City was favoring Beta to the harm of MHI and similarly situated general aviation tenants at the Airport.

97.    The individual Defendants acted in concert with the City and other as-yet unidentified persons to retaliate against Plaintiffs because of Plaintiffs' public opposition to the manner in which the City was favoring Beta to the harm of MHI and other general aviation tenants.

98.    By retaliating against Plaintiffs due to their protected political speech, Defendants have violated the First Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. § 1983.

99.    MHI and Chase were engaged in constitutionally protected activity in 2021 and 2022 when they publicly criticized Defendants' improper favoritism towards Beta and the manner in which Defendants were facilitating Beta to improperly displace MHI and other general aviation tenants from the Airport.

100.    The retaliation inflicted on MHI and Chase by Defendants would have chilled an ordinary person from continuing to pursue that constitutionally protected activity.

101.    Defendants' mistreatment of Plaintiffs was substantially motivated by Plaintiffs' exercise of the constitutionally protected activity.

102.    Defendants' retaliation towards Plaintiffs because of Plaintiffs' exercise of their First Amendment rights was based on a policy and practice developed and implemented by the City's municipal government.

103.    Plaintiffs have been severely economically harmed by the retaliation inflicted on them by Defendants in an amount to be determined at trial.

104.    Because the case law of the U.S. Court of Appeals for the Second Circuit had clearly established that the First Amendment protects against retaliation for the exercise of free speech, Defendants Longo and Carman are not entitled to qualified immunity.

## COUNT TWO – VIOLATION OF THE VERMONT CONSTITUTION

105.    Plaintiffs restate and incorporate herein the allegations set forth above.

106.    Defendants retaliated against Plaintiffs' exercise of the with right to free speech and to petition by retaliating against them denying them access to BTV where they had been in business for many years only after the Plaintiffs refused to agree to a Gag Clause that among other things would prevent them from contesting the City's overt favoritism to Beta to the detriment of Defendants and other long-term tenants.

107.    Defendants' improper acts of retaliation undermined Plaintiffs' business and caused substantial financial harm to MHI and Eric Chase, in an amount to be determined at trial.

108.    Defendants' actions infringed the Defendants' Constitutional rights guaranteed under the Vt. Const. ch I, art. 7 and art. 13.

## COUNT THREE – TRESPASS TO CHATTELS

109.    Plaintiffs restate and incorporate herein the allegations set forth above.

110.    Through their acts of retaliation aimed at Plaintiffs, Defendants improperly denied Plaintiffs access to their aircraft at BTV, which constituted unlawful trespass to chattels under

Vermont law.

111.    Plaintiffs had right to possess the aircraft at BTV.

112.    Through their actions, Defendants intentionally interfered with Plaintiffs' property without Plaintiffs' consent.

113.    Defendants' interference with Plaintiffs' aircraft deprived them of possession and use of the property, and caused them damages because of the inability to access their aircraft.

114.    The interference resulted in actual harm or damages to be determined at trial.

## PRAYER FOR RELIEF

For the reasons set forth above, Plaintiffs Mansfield Heliflight, Inc. and Eric D. Chase, respectfully request that the Court:

1.    Accept jurisdiction over this matter;

2.    Empanel a jury to hear and decide all issues within its province;

3.    Award Plaintiffs compensatory damages;

4.    Award Plaintiffs punitive damages;

5.    Award Plaintiffs' counsel the reasonable fees and costs associated with the pursuit of this matter pursuant to 42 U.S.C. § 1988; and

6.    Enter any other award it deems just, equitable and in the interests of justice.

Respectfully Submitted,

M. Roy Goldberg
CLARK HILL PLC
1001 Pennsylvania Avenue N.W.
Suite 1300 South
Washington, D.C. 20004
Tel. (202) 552-2388
Email: rgoldberg@clarkhill.com
(Application for Admission Pro Hac Vice
to be Submitted)

Steven Watson, Vermont Bar No. 2482
Brooks & Watson, PLC
396 Main Street, Suite A
Westbrook, ME 04092-4390
Tel. (802) 825-9339
Email: steve@brookswatsonplc.com

CLARKHILL\M8787\500444\281658000.v1-4/11/25

Christopher A. Duggan, BBO 544150
SMITH DUGGAN CORNELL & GOLLUB
LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel. (617) 228-4444
Email: Chris.Duggan@smithduggan.com
(Application for Admission Pro Hac Vice to
be Submitted)

**COUNSEL FOR PLAINTIFFS MANSFIELD HELIFLIGHT, INC. AND ERIC D. CHASE**

Dated: April 11, 2025

CLARKHILL\M8787\500444\281658000.v1-4/11/25