IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| MANSFIELD HELIFLIGHT, INC. | ) | |
| and ERIC D. CHASE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:25-cv-00388 |
| | ) | The Hon. Chief Judge Reiss |
| NICHOLAS R. LONGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS**

M. Roy Goldberg
CLARK HILL PLC
1001 Pennsylvania Avenue N.W.
Suite 1300 South
Washington, D.C. 20004
Tel. (202) 552-2388
Email: rgoldberg@clarkhill.com
(Admitted Pro Hac Vice)

Steven Watson, Vermont Bar No. 2482
Brooks & Watson, PLC
396 Main Street, Suite A
Westbrook, ME 04092-4390
Tel. (802) 825-9339
Email: steve@brookswatsonplc.com


Christopher A. Duggan
SMITH DUGGAN CORNELL & GOLLUB
LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel. (617) 228-4444
Email: Chris.Duggan@smithduggan.com
(Admitted Pro Hac Vice)

Counsel for Plaintiffs Mansfield Heliflight, Inc. and Eric D. Chase

Dated: June 26, 2025

Plaintiffs Mansfield Heliflight, Inc. ("MHI") and Eric D. Chase ("Chase") (collectively Plaintiffs), by and through undersigned counsel, oppose Defendants' Motion to Dismiss which Defendants base on the *Colorado River* abstention doctrine,[1] as well as their fallback Motion to Stay this action pending the final resolution of a state law contract and tort case pending in Vermont Superior Court, *Mansfield Heliflight v. City of Burlington et al.,* No. 22-CV-03976 (Vt. Super. Ct. Chittenden Cty.) (the "State Court Case"), ECF 12. The existence of the pending State Court Case in no way supports dismissal or stay of this federal case, which challenges the unlawful efforts of municipal officials to retaliate against private citizens because of their exercise of their First Amendment rights to criticize the municipality for improperly obstructing the public's use of a federally-funded airport for their aeronautical activities.

In short, the Defendants do not get to escape liability under 42 U.S.C. § 1983 for their egregious violation of Plaintiffs' First Amendment rights of freedom of expression merely because a state-court case having nothing to do with Section 1983 or the First Amendment happens to also be pending.

## INTRODUCTION

In order to place in proper perspective the Defendants' efforts to avoid this litigation by relying on the *Colorado River* abstention doctrine, it is useful to set forth the different nature and characteristics of (1) the pending State Court Case, and (2) this federal litigation:

### A.  PLAINTIFFS' CONTRACT AND TORT CLAIMS IN THE STATE COURT CASE.

In late 2022, MHI filed a declaratory judgment action in Vermont Superior Court, alleging state law claims in contract and tort related to a five-year lease that began on May 17, 2017 ("Lease") between MHI and the City of Burlington ("City") Defs.' Mot. Ex. Defs.' Mot. to Dismiss

---

[1] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Ex. C (Pls.' Second Am. Compl.), *Mansfield Heliflight v. City of Burlington*, No. 22-CV-03976 (Vt. Super. Ct. Chittenden Cty.) ("SAC"), ¶¶ 24-26. The Lease was for MHI's use of the south hangar and additional undeveloped land at the Patrick Leahy Burlington International Airport ("BTV" or "Airport"). *Id.* In the Lease, MHI had an option to renew the Lease for a second five-year term, *i.e.*, until 2027. *Id.*

A recently founded electric aircraft development company called Beta Technologies, Inc. ("Beta") sought to procure the undeveloped land in MHI's Lease as part of a much larger project that Beta was proposing to the City in order for Beta to create a significant presence at BTV. SAC, ¶¶ 38, 84. On April 15, 2021, Beta asked MHI if it wanted to sell its Lease. *Id.* ¶¶ 38-43. The parties discussed the sale but could not agree on terms and the negotiations did not succeed. *Id.* ¶¶ 42-47. On April 26, 2021, MHI gave notice in an email to the City's Director of Aviation that it wanted to exercise its option to renew the Lease for a second five-year term. *Id.* ¶ 50. The Director of Aviation acknowledged the email and MHI believed it had effectively exercised its option to renew the Lease for a second five-year term. *Id.* ¶¶ 51-61.

On December 20, 2021, the City sent a letter to MHI stating that it wanted to reduce the physical space covered by the Lease and negotiate new lease terms. SAC ¶¶ 73, 74. MHI rejected the City's newly proposed lease terms. *Id.* ¶ 75.

The City continued sending MHI rental invoices and MHI continued paying rent through May 2022, which was the first month of the second five-year term. SAC ¶¶ 76-79. Thereafter the City stopped sending rental invoices to MHI and refused rental payments made by MHI. *Id.* ¶¶ 80-83.

On or about July 18, 2022, the City and Beta signed a 75-year lease that included part of the undeveloped land that was part of MHI's Lease. SAC ¶¶ 84-85. On September 28, 2022, the

City sent MHI a notice terminating the Lease. *Id.,* ¶ 88. On November 1, 2022, the City forcibly ejected MHI from the Airport. *Id.* ¶¶ 101-105.

Based on those allegations, MHI sought a declaration that the City had renewed its Lease with MHI, that MHI's rental payments were current, and that the City owed MHI credits for overpayment of rent. SAC ¶¶ 111-120. MHI also alleged claims against the City for breach of contract, breach of the covenant of good faith, trespass, forcible entry (violation of 12 V.S.A. § 4911), and tortious interference. *Id.* ¶¶ 121-133; 134-137; 138-145; 146-150; 151-159; 160-169. MHI alleged claims against Beta for trespass and tortious interference. *Id.,* ¶¶ 138-145, 151-159. There are no allegations in any of the claims that the City had retaliated against MHI because MHI had exercised its First Amendment rights.

On January 3, 2023, the Superior Court granted the City's Motion to Dismiss MHI's claims for declaratory judgment and breach of contract. Defs.' Mot. Ex. Defs.' Mot. Ex. G (Entry order on City's Mot. to Dismiss, Jan. 23, 2023). On July 5, 2023, the court denied MHI's Motion for Preliminary Injunction ("Ruling on Injunction"). Defs.' Mot. Ex. D (Ruling on Mot. for Prelim. Inj., July 5, 2023). On September 18, 2023, the state court granted Beta's Motion to Dismiss MHI's claim for tortious interference with prospective business advantage but denied the motion with respect to interference with contractual relations. *See* Defs.' Mot. Ex. H (Entry order on Beta's Mot. to Dismiss, Sept. 18, 2023). On November 2, 2023, the state court dismissed MHI's trespass claim against Beta. See Defs.' Mot. Ex. E (Entry order on MHI's Mot. for Summ. J., Nov. 2, 2023).

On April 25, 2024, the Superior Court noted in its Entry Regarding the Motion to Show Cause as follows: "This case seems to be taking time and effort from all parties out of proportion to the underlying claims. In part this may be due to a disconnect about what claims still exist with regard to the renewal of the lease." Defs.' Mot. Ex. Ex. I (Entry Order on Mot. to Show Cause,

3

Apr. 25, 2024). As of this date, the Superior Court has not issued any final rulings on the remaining claims against the City for breach of the covenant of good faith, trespass, forcible entry, and tortious interference in the State Court Case.

### B. PLAINTIFFS' FIRST AMENDMENT CLAIM IN THIS COURT.

On April 14, 2025, Plaintiffs filed this federal court action, alleging a violation of First Amendment rights under 42 U.S.C. § 1983 based on Defendants' retaliation for Plaintiffs' protected political speech. Compl. ¶ 98. The Complaint also invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 for two state law claims: a violation of Plaintiffs' protected free speech under Ch. I, Art. 7 and Art. 13 of the Vermont Constitution, and a claim for trespass to chattels. Compl. ¶¶ 11, 106-108, 110-114.

The constitutionally protected speech at issue is Chase's and MHI's public opposition to the City's decisions to display so much unchecked favoritism to Beta to the detriment of MHI and other airport users who were to be denied reasonable access to the Airport's aeronautical facilities because of the City's excessive accommodation of Beta. Compl. ¶¶ 1-5, 96-104. Plaintiff Chase spoke out against the City's favoritism towards Beta on several occasions, including:

> (1) In a VT Digger article on December 20, 2021, titled "As Beta expands, other Burlington Airport tenants worry they'll be boxed out," Chase criticized the Airport for not getting MHI's input on the Airport's master plan and expressed concern that the permits for Beta's manufacturing facility included the use of land currently in MHI's lease. *Id.* ¶ 41-43.

> (2) In a second VT Digger article on January 4, 2022, titled "Tenants decry Burlington airport director's handling of Beta expansion," MHI is named as being among those disgruntled tenants. It noted the conflict between Defendant Nic Longo's

4

assurances to the city council that "no aviation-related tenants would be affected by an agreement with Beta," and the City's plan to take the parking and lawn areas that were part of MHI's lease and give them to Beta so it could build a loading dock. *Id.* ¶ 44.

(3) A January 5, 2022 letter to the mayor and members of the city council from "Members of the General Aviation Community," which included MHI and Chase, claimed that the council's approval of the license agreement with Beta was "based on false pretenses," and that the lease extensions were "inconsistent from tenant to tenant" and created uncertainty about the tenants' "ability to continue to operate at the airport beyond a relatively short period of time." *Id.* ¶ 45.

(4) In early January 2022, Chase appeared on a local Channel 3 news broadcast and reiterated his complaint about the City allowing Beta to lease MHI's parking area and how that would negatively impact MHI's business plans. *Id.* ¶ 46.

On April 15, 2022, following these public criticisms, the City sent MHI a proposed 30-day lease extension for the south hangar that required MHI to agree to cease all public criticism of the City with regard to the Airport:

> **6. Non-Opposition.** Lessee agrees not to contest, appear as an adverse party, or in any other manner oppose or appeal, any application made by the City, its agents, or other tenants ("Lessor Affiliates") to any governmental or municipal entity, board, commission or officer for improvements, alterations or expansion of or to the Burlington International Airport, including without limitation, any application made by the City or Lessor Affiliates to the South Burlington zoning administrator, the South Burlington Development Review Board, the Vermont District Environmental Commission, or any other municipal or state regulatory body. Breach of this covenant shall be a material event of default under the Lease and cause for immediate termination.

Compl. ¶ 49. In July 2022, the City demanded that MHI execute an even more stringent non-opposition clause that included language denying MHI any "opportunity to cure" if it violated the

5

Non-Opposition clause. MHI refused to sign the new lease with the non-opposition clause. *Id.* ¶ 62.

Defendants thereafter continued their retaliation against Plaintiffs, denying Chase access to secure areas of the Airport, evicting MHI and Chase from the south hangar, threatening to seize their aircraft, and forcing them to remove their aircraft from the Airport. Compl. ¶¶ 64, 84, 85. On March 19, 2024, MHI was notified by the Vermont Chamber of Commerce - an organization that MHI has been an active member of since 1997 - that staff at the Airport had noticed that MHI had signed up to attend a Chamber event being held at the Airport, and informed the Chamber that MHI was not going to be allowed in the public Airport Terminal to attend the event. Compl. ¶ 93.

In essence, the Defendants sought to ruin the ability of Plaintiffs to conduct business operations at the Airport.

## LEGAL STANDARDS

A motion to dismiss based on *Colorado River* abstention is analyzed as a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *City of New York v. Milhelm Attea & Bros., Inc*., 550 F.Supp.2d 332, 341-342 (E.D.N.Y. 2008). The standard of review for a Rule 12(b)(1) motion to dismiss is "essentially identical to the Fed.R.Civ.P. 12(b)(6) standard, … except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *United States v. Blake,* 942 F. Supp.2d 285, 292 (E.D.N.Y. 2013) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)). Although "'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions[.]'" *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). In ruling on a Rule 12(b)(1) motion, the court may consider matters outside the pleadings. *Blake,* 942 F. Supp.2d at 292.

6

## A. Motion to Dismiss Based on *Colorado River* Abstention.

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, and abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Village of Westfield v. Welch's*, 170 F.3d 116, 120-21 (2d Cir. 1999) (quoting *Colorado River*, 424 U.S. at 818). A prerequisite to abstention under *Colorado River* is a finding that the state and federal cases are parallel. *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). Cases are parallel where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (quoting *Day v. Union Mines Inc.,* 862 F.2d 652, 655 (7th Cir, 1988). However, a mere similarity in subject matter is not sufficient to conclude that cases are parallel. *Id.* Rather, the "exceptional circumstances" justifying abstention are present only if a "comprehensive disposition" of the case is possible in state court. *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.,* 239 F.3d 517, 522 (2d Cir. 2001) (quoting *Colorado River,* 424 U.S. at 817). If the cases are not parallel, "*Colorado River* abstention does not apply, whether or not issues of state law must be decided by the federal court." *Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6, 20 (E.D.N.Y. 2014).

When there is a "substantial doubt that the parallel litigation will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("*Moses Cone*")).

If the Court finds that the cases are parallel, it is then required to weigh six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16.

These six factors include: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal

litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2nd Cir. 1999) (citation omitted).

In balancing the six factors, "the Supreme Court admonishes that no single factor is necessarily decisive, and that the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case[.]'" *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir. 1989) (quoting *Moses Cone,* 460 U.S. at 16). In determining which way the balance tips in evaluating the *Colorado River* factors, the "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir.1985).

### B. Motion to Stay the Federal Case.

Where the remedy sought is a stay rather than a dismissal, the Court applies the same standards set forth in *Colorado River,* because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Petition of Rosenman Colin Freund Lewis & Cohen,* 644 F. Supp. 858, 860 (S.D.N.Y. 1986) (quoting *Moses Cone,* 460 U.S. at 28-29).

Although the District Court has discretion to stay a federal action to allow resolution of similar causes of action pending in a state court, it also has "wide discretion, and in some cases a duty, not to abstain merely because a state suit is pending in which some of the same issues may be decided." *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 629 (2d Cir. 1976). The argument for retaining federal jurisdiction is particularly strong in Section 1983 cases, which exist in order "to provide a remedy in the federal courts supplementary to any remedy any State might have." *McNeese v. Bd. of Educ., for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 672 (1963) (citation

omitted). That purpose would be defeated if it were "held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court." *Id.*

## ARGUMENT

### I. THE STATE AND FEDERAL CASES ARE NOT PARALLEL AND THE *COLORADO RIVER* ABSTENTION DOCTRINE DOES NOT APPLY.

#### A. The State Court Case Will Not Dispose of all the Claims in the Federal Case.

The state and federal cases are not parallel unless there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Addison Cent. Sch. Dist. v. Monsanto Co.,* No. 2:23-CV-00164, 2024 WL 4100279, at *4 (D. Vt. Sept. 6, 2024) (quoting *Day v. Union Mines Inc.,* 862 F.2d 652, 656 (7th Cir. 1988)). The First Amendment violations and the trespass to chattels claim are not alleged in the State Court Case and cannot be resolved by it. For that reason, the "exceptional circumstances" justifying abstention are not present because a "comprehensive disposition" of the case is not possible in state court. *Woodford,* 239 F.3d at 522 (quoting *Colorado River,* 424 U.S. at 813).

Indeed, it is not surprising at all that courts have refused to provide *Colorado River* abstention in cases involving claims under 42 U.S.C. § 1983 for unlawful retaliation in violation of the First Amendment. For example, in *Behavioral Healthcare Partners, Inc. v. Gonzalez-Rivera,* 392 F.Supp.2d 191 (D. Puerto Rico 2005), *Colorado River* abstention was not warranted in a § 1983 action in which a government contractor and its principals alleged that the Puerto Rico Health Insurance Administration and its executive director and director of internal auditing engaged in a scheme to hurt plaintiffs' reputation and business goodwill so as to justify cancellation of contracts by which the contractor coordinated the delivery of mental healthcare services to persons eligible for Medicare and Medicaid benefits. The court reasoned that because the federal case was predicated on the alleged violations of federal constitutional rights, there was no reason

9

to defer to the state court's interpretation of legal issues involved, and that the plaintiffs had reasonable explanation for filing simultaneous state and federal actions, in that, due to sovereign immunity, certain retroactive compensatory damages could only be requested in the state court case. The court stated:

> On the other hand, there are other crucial factors that weigh against abstention. This is a section 1983 action predicated on violations of federal constitutional rights. Congress provided plaintiffs in section 1983 the right to a federal forum for the ventilation of their constitutional claims. *See Zwickler v. Koota,* 389 U.S. 241, 248 (1967) (recognizing that Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims). Moreover, there is no reason to defer to the state court's interpretation of the legal issues involved.

392 F. Supp. 2d at 201; *See also Kaminsky v. Schriro*, No. 3:14-cv-01885 (MPS), 2016 WL 3460303 (D. Conn. June 21, 2016) (refusing to apply *Colorado River* abstention to plaintiff's claim for asserted retaliation claims under the First Amendment); *Pastrana Torres v. Zabala Carrion*, 376 F. Supp. 2d 209, 215 (D. Puerto Rico 2005) ("Plaintiff's First Amendment claim is straightforward, and implicates no distinct state law issues – a fact that sways mildly against the winds of abstention. . . . Further, the presence of a federal law issue such as a First Amendment claim 'must always be a major consideration weighing against surrender' of jurisdiction."

The above-referenced cases are more than sufficient to deny Defendants' motion. Moreover, Defendants fail to cite a single case where a federal court dismissed or stayed a § 1983 claim alleging violation of the First Amendment because of the existence of a pending state court case which did not include the same First Amendment claim.

**B. The State and Federal Cases Involve Different Parties and Different Issues.**

This is also not a situation where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. Cnty. Of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998) (quoting *Day v. Union Mines Inc.,* 862 F.2d 652, 655 (7th Cir. 1988)). The

Section 1983 claim filed in this case names Defendants Longo and David E. Carman ("Carman") who are not parties in the state action. Their individual liability under § 1983 requires analysis of the additional issue of qualified immunity. *Radwan v. Manuel,* 55 F.4th 101, 113 (2nd Cir. 2022) (two-part test for qualified immunity requires violation of "a federal statutory or constitutional right" and proof that "the unlawfulness of their conduct was 'clearly established at the time.'") (citations omitted).

Nor are the issues in the state and federal cases substantially the same. There are no federal claims or First Amendment issues in the State Court Case. None of the claims in the State Court Case are included in this federal proceeding. The trespass to chattels is a state law claim that occurs when someone "damages or interferes with the use of property belonging to another." *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F.Supp. 1273, 1281 (E.D.N.Y. 1995) (citing Restatement (Second) of Torts §§ 217-221, at 417-428 (1965)). It is not the same as the trespass and forcible entry claims in the state case that are based on the City's entry into the land and premises that it owned and leased to MHI.

### C.  The State Court's Finding that the City Had a Legitimate Basis to Not Renew the Lease Does Not Preclude the Plaintiffs' Claims in Federal Court.

Defendants argue that because both cases focus on the actions of the parties with respect to the Lease that there is a substantial similarity of issues justifying abstention. Defs.' Mot., at 2-3. A similar fact pattern is not enough to support a finding that the cases are parallel. *See, e.g., Woodford*, 239 F.3d at 522 ("the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction") (citing *Colorado River*, 424 U.S. at 817 (internal quotation marks omitted)).

The State Court Case rulings on the Lease have no impact on the viability of the First Amendment claims in the federal case. The entry order dismissing the declaratory judgment and

breach of contract makes no findings with respect to the elements of First Amendment retaliation. Defs.' Mot., Ex. G. The state court finding that the City had a legitimate basis for not renewing the Lease does not mean that the City could not also have been motivated by retaliation for Plaintiffs' exercise of their First Amendment rights. The breach of contract and First Amendment claims are not mutually exclusive. First Amendment retaliation claims anticipate that the plaintiff will make a *prima facie* showing of retaliation and the burden will then shift to the defendant to show that it would have taken the adverse action anyway. *See, Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 845 (2nd Cir. 2013) (after a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action.)

Defendants attempt to buttress their argument by contending that the viability of Plaintiffs' three claims in this federal case "is entirely reliant on findings yet to be made in the Superior Court case." Defs.' Mot., p. 10-11. That is not true. First, there is no issue in the State Court Case involving retaliation for the plaintiff's exercise of First Amendment rights. Second, it is a matter of pure speculation how any future rulings on state law contract claims could dispose of Plaintiffs' First Amendment claims in the federal case, and Defendants cite no legal authority or reasoned argument in support of that contention.

### D. The State Court's Findings that Plaintiffs Had Not Shown a Likelihood of Irreparable Harm or Success on the Merits to Justify Injunctive Relief Do Not Preclude the Plaintiffs' Claims in Federal Court.

Defendants argue that the viability of Plaintiffs' claim for trespass to chattels and First Amendment violations in the federal case depends on rulings the state court has made or will make in the future about the Lease and whether the City "had a right to the property on the formerly leased premises." Defs.' Mot. at 11-12. This argument fails to recognize the distinction between trespass to land, which is a claim Plaintiffs alleged that is properly before the state court, and trespass to chattels, which the Plaintiffs have only alleged in federal court.

12

The claims for trespass and forcible entry in the state case are based on the City's trespass onto the land and premises subject to the terms of the Lease. Defs.' Mot., Ex. C, ¶¶ 138-150. Those claims have nothing to do with the City's right "to enter the leased premises and repossess Plaintiff's property." Defs.' Mot. at 12. That issue is addressed only in Plaintiffs' claim for trespass to chattels in the federal case and is based upon the City denying Plaintiffs access to their personal property. Comp, ¶¶ 109-114.

As a basis for arguing that the trespass to chattels is an issue before the state court, Defendants rely on the Stipulated Temporary Restraining Order ("TRO") filed on December 9, 2022, and on the Ruling on Injunction. Defs.' Mot., Exs. D, K. The TRO was negotiated "so as to obviate the need for an immediate hearing." Defs.' Mot., Ex. K. It does not contain any ruling on the merits of the trespass claims or any reference to First Amendment retaliation. *Id.*

In the Ruling on Injunction, the state court denied MHI's request to bar the City "from evicting MHI while the case is proceeding." Defs.' Mot., Ex. D. The ruling finds that MHI failed to demonstrate the irreparable harm and a likelihood of success on the merits necessary for injunctive relief. *Id.* at 8. There is no discussion of the trespass and forcible entry claims or the City's right to enter the south hangar and repossess Plaintiffs' property. *Id.* at 1-8.

## II.    Even if the Court Finds that the State Court and Federal Court Cases are Parallel, a Balancing of the Six Factors in *Colorado River* Favors Retaining Federal Jurisdiction.

In balancing the six factors in *Colorado River,* "only the clearest of justifications will warrant dismissal." *Moses Cone,* 460 U.S. at 15-16.

### A.  The Controversy Does Not Involve a Res Over Which One of the Courts Has Assumed Jurisdiction.

The state case is not an action *in rem* or *quasi in rem.* The state court has not assumed jurisdiction over a res. Defendants argues that because the state court case involves "issues related

13

to real property," it is "similar to cases involving a res[.]" Defs.' Mot.at 12-13. However, the state case is adjudicating the rights of the parties with respect to the Lease, not their rights with respect to the City's ownership of land and premises at the Airport or MHI's ownership of the planes and helicopters it kept there. *See, In re D.L.,* 164 Vt. 223, 229, 668 A.2d 1272 (1995).

The Second Circuit has held that the absence of a res "point[s] toward exercise of federal jurisdiction." *Village of Westfield v. Welch's,* 170 F.3d 116, 122 (2d Cir. 1999) (quoting *De Cisneros,* 871 F.2d at 307).

### B.  The Federal Forum Is Not Inconvenient.

Both the Vermont Superior Court, Chittenden Unit, that has jurisdiction over *Mansfield Heliflight v. City of Burlington et al.,* Docket No. 22-CV-03976, and the United States District Court for the District of Vermont, where Chief Judge Reiss has been assigned in this federal case, are in Burlington, Vermont. For that reason, there is no inconvenience created by retaining jurisdiction for the federal case.

The Second Circuit has held that where the federal court is "just as convenient" as the state court, the second factor "favors retention of the case in federal court." *Westfield,* 170 F.2d at 122 (quoting *Youell v. Exxon Corp.,* 48 F.3d 105, 113 (2d Cir. 1995).

### C.  Abstention Is Not Necessary in Order to Avoid Piecemeal Litigation.

Even though the City's conduct with respect to the Lease is the factual basis for Plaintiffs' claims in both courts, there is no overlap or duplication of claims in the state and federal cases. The First Amendment claims and the trespass to chattels claim in the federal case are not alleged in the state case. The legal analysis of the Section 1983 claim, especially with the addition of defendants Longo and Carman, involves elements of proof that cannot be addressed in the claims before the state court and damages that are not available in those claims.

Because adjudication of all the state claims would not dispose of the federal claims and because the Section 1983 claim seeks damages not available in the claims before the state court, there is no reason to dismiss or stay the federal case under the third factor of *Colorado River* analysis. *See, Woodford,* 239 F.3d at 523-524 (the third factor is not met where the elements of proof do not overlap in the two courts and the damages available in the federal claim are greater).

### D. The Limited Progress in the State Court Case Weighs Against Giving It Priority Merely Because It was Filed Before the Federal Case.

In weighing the fourth factor in the *Colorado River* abstention analysis, "priority should not be measured exclusively by which complaint was filed first, but rather by how much progress has been made in the two actions. *Moses Cone,* 460 U.S. at 21. Even though the state case was filed in November 2022, the court acknowledged on April 25, 2024, that "[t]his case seems to be taking time and effort from all parties out of proportion to the underlying claims." Defs.' Mot., Ex. I, at 1. Because there has been limited progress in the roughly two-and-a-half years the state case has been pending, "'the fact that the state action was commenced before the federal suit carries little weight.'" *Westfield,* 170 F.3d at 123 (quoting *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 64 (2d Cir. 1986)); *see, Woodford,* 239 F.3d at 524-525 (the fact that discovery had not begun in the federal case was not a factor that weighed in favor of abstention where the progress in the state case remained uncertain).

### E. Because Federal Law Governs the Section 1983 Claim the Federal Court Should Retain Jurisdiction.

The fifth *Colorado River* factor weighs against abstention. There is no overlap of claims in the state and federal cases. The Section 1983 claim is the only federal claim in either case and it will be governed by federal laws. *See Woodford,* 239 F.3d at 523-524 (the fifth factor weighs against abstention where none of the elements of proof overlap, no federal claim is made in the

state court, and the federal court will have to apply federal law); *see also, Westfield,* 170 F.3d at

124 ("the presence of federal issues strongly advises exercising federal jurisdiction").

**F. The State Court Case Will Not Adequately Protect the Rights of the Party Seeking to Invoke Federal Jurisdiction.**

The sixth factor in the *Colorado River* test weighs against abstention. Where federal

remedies are not available "on the claims asserted in the state-court action[] … the relief available

is not the same," and the rights of the party seeking federal jurisdiction are not protected.

*Woodford,* 239 F.3d at 525. Defendants argue that Plaintiffs can bring the Section 1983 claim in

state court. Defs.' Mot.at 18. At this stage of the state court proceedings, more than two years after

the case was filed and with discovery almost complete, that is not a realistic option.

Plaintiffs will lose significant rights if the Court does not retain federal jurisdiction. The

attorneys' fees and costs available to Plaintiffs under 42 U.S.C. § 1988, the individual liability

sought against Defendants Longo and Carman, and a jury trial on the Section 1983 claim are not

available to the Plaintiffs based on the remaining claims in the state case.

**III. The Same *Colorado River* Standards that Weigh Against Abstention Apply in Evaluating the Motion to Stay.**

As noted above, it is not realistic to argue that Plaintiffs can amend their complaint at this

stage of the state court proceedings to include the claims in the federal case. If the federal case is

stayed until the state case is resolved, Plaintiffs will be precluded from proceeding with the claims

in its federal case due to issue and claim preclusion. Because there is no meaningful distinction

between a dismissal resulting from a stay and an outright dismissal under *Colorado River*

abstention, the Court applies the same standards set forth in *Colorado River* in analyzing

Defendants' Motion to Stay. *Rosenman,* 644 F. Supp. at 860. For that reason, Plaintiffs reassert

their arguments above on *Colorado River* abstention to oppose Defendants' Motion to Stay.

## <u>CONCLUSION</u>

For the reasons set forth above, the Motion to Dismiss or for Stay, ECF 12, should be denied.

| | |
|---|---|
| M. Roy Goldberg | /s/ Steven Watson |
| CLARK HILL PLC | Steven Watson, Vermont Bar No. 2482 |
| 1001 Pennsylvania Avenue N.W. | Brooks & Watson, PLC |
| Suite 1300 South | 396 Main Street, Suite A |
| Washington, D.C. 20004 | Westbrook, ME 04092-4390 |
| Tel. (202) 552-2388 | Tel. (802) 825-9339 |
| Email: rgoldberg@clarkhill.com | Email: steve@brookswatsonplc.com |
| (Admitted Pro Hac Vice) | |
| | Christopher A. Duggan |
| | SMITH DUGGAN CORNELL & GOLLUB LLP |
| | 55 Old Bedford Road, Suite 300 |
| | Lincoln, MA 01773 |
| | Tel. (617) 228-4444 |
| | Email: Chris.Duggan@smithduggan.com |
| | (Admitted Pro Hac Vice) |

Counsel for Plaintiffs Mansfield Heliflight, Inc. and Eric D. Chase

Dated: June 26, 2025

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of June, 2025, I electronically caused the foregoing brief to be filed with the Clerk of Court by using the CM/ECF system, which will send the electronic filing to all counsel of record.


<u>/s/ Roy Goldberg</u>
Roy Goldberg

18